**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER DAVENPORT, ATTORNEY GENERAL OF NEW JERSEY,<br><br>*Plaintiff*,<br><br>v.<br><br>CRH PLC<br>Stonemason's Way<br>Rathfarnham, Dublin, Ireland D16 KH51<br><br>and<br><br>ARCOSA, INC.<br>500 N. Akard St., Suite 400<br>Dallas, Texas 75201<br><br>*Defendants*. | Civil Action No. 2:26-cv-13625 |

**PROPOSED FINAL JUDGMENT**

WHEREAS, Plaintiff Jennifer Davenport, Attorney General of New Jersey, filed its Complaint on October 20, 2026;

AND WHEREAS, Plaintiff and Defendants, CRH PLC and Arcosa, Inc. have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Defendants agree to make certain divestitures to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestiture and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of

hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act (15 U.S.C. § 18).

## II. DEFINITIONS

A. "Acquirer" means an entity approved by the Plaintiff in her sole discretion to which Defendants divest the Divestiture Assets.

B. "Arcosa" means Defendant Arcosa, Inc., a Delaware corporation with its headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "CRH" means Defendant CRH PLC, an Irish public limited company with its headquarters in Dublin, Ireland, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D. "Divestiture Assets" means the Flemington Divestiture Assets, the South River Divestiture Assets, the Hillsborough Divestiture Assets, the Howell Divestiture Assets, and the Pennington Divestiture Assets.

E. "Divestiture Date" means the date on which the Divestiture Assets are divested to Acquirer pursuant to this Final Judgment.

F. "Flemington Asphalt" means Arcosa's HMA plant located at 205 Pennsylvania Avenue, Flemington, New Jersey 08822.

G. "Flemington Divestiture Assets" means all of Arcosa's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the manufacture and sale of hot-mix asphalt from Flemington Asphalt, including:

a. Flemington Asphalt and the real property located at 205 Pennsylvania Avenue, Flemington, New Jersey 08822;

b. all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

c. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

d. all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. to the extent permissible by law, all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f. the following records and data: (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and (d) drawings, blueprints, and designs; and, at the option of Acquirer, all other records and data, including (e) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and

g. the following intangible property: (a) technical information and (b) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures and, at the option of Acquirer, all other intangible property, including: , (c) computer software and related documentation, and (d) design tools and simulation capabilities.

H. "Hillsborough Asphalt" means Arcosa's HMA plant located at 340 Valley Road, Hillsborough, New Jersey 08844.

I. "Hillsborough Divestiture Assets" means all of Arcosa's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the manufacture and sale of hot-mix asphalt from Hillsborough Asphalt, including:

a. Hillsborough Asphalt and the real property located at 340 Valley Road, Hillsborough, New Jersey 08844;

b. all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

c. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

d. all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. to the extent permissible by law, all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f. the following records and data: (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and (d) drawings, blueprints, and designs; and, at the option of Acquirer, all other records and data, including (e) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and

g. the following intangible property: (a) technical information and (b) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures and, at the option of Acquirer, all other intangible property, including: , (c) computer software and related documentation, and (d) design tools and simulation capabilities.

J. "HMA plant" means a plant that produces hot-mix asphalt.

K. "Howell Asphalt/Recycle" means Arcosa's HMA plant and recycling facility located at 104 Yellowbrook Road, Howell, New Jersey 07731.

L. "Howell Divestiture Assets" means all of Arcosa's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the manufacture and sale of hot-mix asphalt from Howell Asphalt/Recycle, including:

a. Howell Asphalt/Recycle and the real property located at 104 Yellowbrook Road, Howell, New Jersey 07731;

b. all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

c. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

d. all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. to the extent permissible by law, all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f. the following records and data: (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and (d) drawings, blueprints, and designs; and, at the option of Acquirer, all other records and data, including (e) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and

g. the following intangible property: (a) technical information and (b) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures and, at the option of Acquirer, all other intangible property, including: , (c) computer software and related documentation, and (d) design tools and simulation capabilities.

M. "Including" means including, but not limited to.

N. "Pennington Asphalt" means CRH's HMA plant located at 120 NJ-31, Pennington, New Jersey 08534.

O. "Pennington Divestiture Assets" means all of CRH's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the manufacture and sale of hot-mix asphalt from the Pennington Asphalt, including:

a. the Pennington HMA plant and the portion of the real property used for the HMA plant located at 120 NJ-31, Pennington, New Jersey 08534;

b. all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

c. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

d. all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. to the extent permissible by law, all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or

granted by any governmental organization, and all pending applications or renewals;

f. the following records and data: (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and (d) drawings, blueprints, and designs; and, at the option of Acquirer, all other records and data, including (e) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and

g. the following intangible property: (a) technical information and (b) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures and, at the option of Acquirer, all other intangible property, including: , (c) computer software and related documentation, and (d) design tools and simulation capabilities.

P. "Relevant Personnel" means the employees listed in Appendix A, and at the option of the Acquirer, all full-time, part-time, or contract employees of CRH or Arcosa, wherever located, whose job responsibilities relate in any way to the Divestiture Assets, at any time between June 21, 2026, and the Divestiture Date. The Plaintiff, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

Q. "South River Plant" means CRH's HMA plant located at 369 Whitehead Avenue, South River, New Jersey 08882.

R. "South River Divestiture Assets" means all of CRH's rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the manufacture and sale of hot-mix asphalt from the South River Plant, including:

a. the South River Plant and the real property located at 369 Whitehead Avenue, South River, New Jersey 08882;

b. all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

c. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

d. all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. to the extent permissible by law, all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f. the following records and data: (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, and (d) drawings, blueprints, and designs; and, at the option of Acquirer, all other records and data, including (e) records and research data concerning historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments; and

g. the following intangible property: (a) technical information and (b) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures and, at the option of Acquirer, all other intangible property, including: (c) computer software and related documentation, and (d) design tools and simulation capabilities.

S. "Transaction" means the proposed acquisition of Arcosa by CRH.

## III. APPLICABILITY

A. This Final Judgment applies to CRH and Arcosa, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B. If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the

provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer.

## IV. DIVESTITURE

A. Defendants are ordered and directed, within 90 calendar days after the Court's entry of this Final Judgment, to divest the Divestiture Assets in a manner consistent with this Final Judgment to Acquirer acceptable to the Plaintiff. After consultation with the Defendants, Plaintiff, in its sole discretion, may agree to one or more extensions of this time period not to exceed 60 calendar days in total and will notify the Court of any extensions.

B. For all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, Defendants must assign or otherwise transfer all contracts, agreements, and customer relationships.

C. Defendants must not interfere with any negotiations between Acquirer and a contracting party or customer.

D. Defendants must use best efforts to divest the Divestiture Assets as expeditiously as possible. Defendants must take no action that would jeopardize the completion of the divestiture ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

E. Unless the Plaintiff otherwise consents in writing, divestiture pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the Plaintiff, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of the manufacture and sale

of hot-mix asphalt, including NJDOT-approved hot-mix asphalt, and that the divestiture to Acquirer will remedy the competitive harm alleged in the Complaint.

F. The divestiture must be made to an Acquirer that, in the Plaintiff's sole judgment, has the intent and capability, including the necessary managerial, operational, technical, and financial capability, to compete effectively in the manufacture and sale of hot-mix asphalt, including NJDOT-approved hot-mix asphalt.

G. The divestiture must be accomplished in a manner that satisfies the Plaintiff, in its sole discretion, that none of the terms of any agreement between Acquirer and Defendants give Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise interfere in the ability of Acquirer to compete effectively in the manufacture and sale of hot-mix asphalt, including NJDOT-approved hot-mix asphalt.

H. In the event Defendants are attempting to divest the Divestiture Assets to any Acquirer, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; provided, however, that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to the Plaintiff at the same time that the information and documents are made available to any other person.

I. Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, and other permitting documents and information relating to the Divestiture Assets; and (3) access to all financial, operational, or other documents and information relating to the Divestiture Assets that would customarily be provided as part of a due diligence process. Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property.

J. Defendants must cooperate with and assist Acquirer in identifying and, at the option of Acquirer, hiring all Relevant Personnel, including:

   a. Within 10 business days following the filing of the Complaint in this matter, Defendants shall identify all Relevant Personnel to Acquirer and Plaintiff, including by providing organization charts covering all Relevant Personnel.

   b. Within 10 business days following receipt of a request by Acquirer or the Plaintiff and the divestiture trustee Defendants must provide to Acquirer, the Plaintiff, and the divestiture trustee additional information relating to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job performance evaluations. Defendants must also provide to Acquirer, the Plaintiff, and the divestiture trustee information relating to current and accrued compensation and benefits of Relevant Personnel, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention agreement or incentives, and any other payments due, compensation or benefits accrued, or promises made to the Relevant Personnel. If Defendants are barred by

any applicable law from providing any of this information, Defendants must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

c. At the request of Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location.

d. Defendants must not interfere with any effort by Acquirer to employ any Relevant Personnel. Interference includes offering to increase the compensation or improve the benefits of Relevant Personnel unless (a) the offer is part of a company-wide increase in compensation or improvement in benefits that was announced prior to October 20, 2026, or (b) the offer is approved by the Plaintiff in its sole discretion. Defendants' obligations under this Paragraph IV.J.d. will expire 180 calendar days after the Divestiture Date.

e. For Relevant Personnel who elect employment with Acquirer within 180 days before the Divestiture Date, Defendants must waive all non-compete and non-disclosure agreements; vest and pay to the Relevant Personnel (or to Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits, or other compensation fully or partially accrued at the time of the transfer of the employee to Acquirer; vest any unvested pension and other equity rights; and provide all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment

with Defendants, including any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

f. For a period of 24 months from the Divestiture Date, Defendants may not solicit to re-hire Relevant Personnel who were hired by Acquirer within 180 days of the Divestiture Date unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to re-hire that individual. Nothing in this Paragraph IV.J. prohibits Defendants from advertising employment openings using general solicitations or advertisements and re-hiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

K. Defendants must warrant to Acquirer that (1) the Divestiture Assets will be operational and without material defect on the date of their transfer to the Acquirer; (2) there are no material defects in the environmental, zoning, or other permits relating to the operation of the Divestiture Assets; and (3) Defendants have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

L. Defendants must use best efforts to assist Acquirer to obtain all necessary licenses, registrations, and permits to operate the Divestiture Business in the manufacture and sale of hot-mix asphalt. Until Acquirer obtains the necessary licenses, registrations, and

permits, Defendants must provide Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

M. If any term of an agreement between Defendants and Acquirer, including an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V. APPOINTMENT OF DIVESTITURE TRUSTEE

A. If Defendants have not divested all of the Divestiture Assets within the period specified in Paragraph IV.A., Defendants must immediately notify the Plaintiff of that fact in writing. Upon application of the Plaintiff, which Defendants may not oppose, the Court will appoint a divestiture trustee selected by the Plaintiff and approved by the Court to effect the divestiture of the Divestiture Assets.

B. After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell those Divestiture Assets that the divestiture trustee has been appointed to sell. The divestiture trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the Plaintiff, in its sole discretion, at a price and on terms obtainable through reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C. Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in

writing to the Plaintiff and the divestiture trustee within 10 calendar days after the divestiture trustee has provided the notice of proposed divestiture required by Section VI.

D. The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the Plaintiff in its sole discretion.

E. The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties. These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the Plaintiff in its sole discretion.

F. The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the Plaintiff, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the Plaintiff.

G. The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets sold by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the Divestiture Date, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants, and the trust will then be terminated.

H. Defendants must use best efforts to assist the divestiture trustee to accomplish the required divestiture. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestiture.

I. The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with the Plaintiff setting forth the divestiture trustee's efforts to accomplish the divestiture ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact.

J. If the divestiture trustee has not accomplished the divestiture ordered by this Final Judgment within 180 calendar days of appointment, the divestiture trustee must promptly provide the Plaintiff with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestiture; (2) the reasons, in the divestiture trustee's judgment, why the required divestiture has not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestiture. Following receipt of that report, the Plaintiff may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the Plaintiff.

K. The divestiture trustee will serve until divestiture of all Divestiture Assets is completed or for a term otherwise ordered by the Court.

L. If the Plaintiff determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the Plaintiff may recommend that the Court appoint a substitute divestiture trustee.

## VI. NOTICE OF PROPOSED DIVESTITURE

A. Within two business days following execution of a definitive agreement with an Acquirer to divest the Divestiture Assets, Defendants or the divestiture trustee, whichever is then responsible for effecting the divestiture, must notify the Plaintiff of the proposed divestiture. If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not

previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B. After receipt by the Plaintiff of the notice required by Paragraph VI.A., the Plaintiff may make one or more requests to Defendants or the divestiture trustee for additional information concerning the proposed divestiture, the proposed Acquirer, and other prospective Acquirers. Defendants and the divestiture trustee must furnish any additional information requested within 15 calendar days of the receipt of each request unless the requesting party provides written agreement to a different period.

C. Within 45 calendar days after receipt of the notice required by Paragraph VI.A. or within 20 calendar days after the Plaintiff has been provided the additional information requested pursuant to Paragraph VI.B., whichever is later, the Plaintiff will provide written notice to Defendants and any divestiture trustee that states whether the Plaintiff, in its sole discretion, objects to the proposed Acquirer or any other aspect of the proposed divestiture. Without written notice that the Plaintiff does not object, a divestiture may not be consummated. If the Plaintiff provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C. of this Final Judgment. Upon objection by Defendants pursuant to Paragraph V.C., a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

## VII. FINANCING

A. Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets.

## VIII. AFFIDAVITS

A. Within 20 calendar days of entry of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestiture required by this Final Judgment has been completed, each Defendant must deliver to the Plaintiff an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel describing in reasonable detail the fact and manner of that Defendant's compliance with this Final Judgment. The Plaintiff, in its sole discretion, may approve different signatories for the affidavits.

B. In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer, each affidavit required by Paragraph VIII.A. must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the Plaintiff to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit, except that the Plaintiff may object at any time if the information set forth in the affidavit is not true or complete.

C. Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.

D. Within 20 calendar days of the filing of the Complaint in this matter, each Defendant must deliver to the Plaintiff an affidavit signed by CRH's Chief Financial Officer and

Defendant Arcosa's Chief Financial Officer that describes in reasonable detail all actions that Defendant has taken and all steps that Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The Plaintiff, in its sole discretion, may approve different signatories for the affidavits.

## IX. COMPLIANCE INSPECTION

A. For the purposes of determining or securing compliance with this Final Judgment or of determining whether this Final Judgment should be modified or vacated, upon the written request of an authorized representative of the Plaintiff Attorney General's Office and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the Plaintiff:

a. to have access during Defendants' business hours to inspect and copy, or at the option of the Plaintiff, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents, wherever located, in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

b. to interview, either informally or on the record, Defendants' officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B. Upon the written request of an authorized representative of the Plaintiff Attorney General's Office, Defendants must submit written reports or respond to written

interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## X. NOTIFICATION

A. Unless a transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), Defendants may not, without first providing at least 30 calendar days advance notification to the Plaintiff, directly or indirectly acquire any assets of or any interest, including a financial, security, loan, equity, or management interest, in an entity involved in the manufacture and sale of hot-mix asphalt in the State of New Jersey during the term of this Final Judgment; provided that notification pursuant to this Section is not required if the entity whose assets or interest are being acquired generated less than $5 million in revenue from the manufacture and sale of hot-mix asphalt in New Jersey during the most recent completed calendar year.

B. Defendants must provide the notification required by this Section X in the same format as, and in accordance with the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations, as amended, except that the information requested in Items 5 through 8 of the instructions must be provided only about hot-mix asphalt.

C. Notification must include, beyond the information required by the instructions, the names of the principal representatives who negotiated the transaction on behalf of each party, and all management or strategic plans discussing the proposed transaction. If, within the 30 calendar days following notification, representatives of the Plaintiff make a written

request for additional information, Defendants may not consummate the proposed transaction until 30 calendar days after submitting all requested information.

## XII. NO REACQUISITION

A. Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without prior written authorization of the Plaintiff.

## XIII. RETENTION OF JURISDICTION

A. The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. ENFORCEMENT OF FINAL JUDGMENT

A. If at any time during the five-year period following entry of this Final Judgment, the Plaintiff determines in its sole discretion that the Final Judgment has failed to fully redress the violations alleged in the Complaint, then Plaintiff may re-open this proceeding to seek additional relief, including divestiture of additional assets. Such additional relief may be ordered by this Court upon a finding by a preponderance of the evidence that there is a reasonable probability that the proposed Final Judgment did not fully redress the violations alleged in the Complaint.

B. The Plaintiff retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. In a civil contempt action, a motion to show cause, or a similar action brought by the Plaintiff relating to an alleged violation of this Final Judgment, the Plaintiff may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a

preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

C. This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Plaintiff alleges was harmed by the challenged conduct. Defendants may be held in contempt of, and the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

D. In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the Plaintiff may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the Plaintiff to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant must reimburse the Plaintiff for the fees and expenses of their attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

E. For a period of four years following the expiration of this Final Judgment, if the Plaintiff has evidence that a Defendant violated this Final Judgment before it expired, the Plaintiff may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate

contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV. EXPIRATION OF FINAL JUDGMENT

A. Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon a motion by the Plaintiff to the Court and notice by the Plaintiff to Defendants that the divestiture has been completed and continuation of this Final Judgment is no longer necessary or in the public interest.

## XVI. PUBLIC INTEREST DETERMINATION

A. Entry of this Final Judgment is in the public interest. Based upon the record before the Court, entry of this Final Judgment is in the public interest.

Date: ____________________

_______________________________
United States District Judge

APPENDIX A

Flemington Asphalt - Employees: (1) Plant Foreman; (2) Loader Operator; (3) Quality Control Technician; (4) Asphalt Plant Laborer.

Howell Asphalt/Recycle- Employees: (1) Plant Foreman; (2) Loader Operator; (3) Quality Control Technician; (4) Asphalt Plant Laborer.

Pennington Asphalt - Employees: (1) Plant Foreman; (2) Loader Operator; (3) Quality Control Technician; (4) Asphalt Plant Laborer.

South River Plant - Employees: (1) Plant Foreman; (2) Loader Operator; (3) Quality Control Technician; (4) Asphalt Plant Laborer.

Hillsborough Asphalt - Employees: (1) Plant Foreman; (2) Loader Operator; (3) Quality Control Technician; (4) Asphalt Plant Laborer.